REITLER KAILAS & ROSENBLATT LLC
Brian D. Caplan
Julie B. Wlodinguer
885 Third Avenue, 20th Floor
New York, NY 10022
Phone: (212) 209-3050
Fax: (212) 371-5500
Email: bcaplan@reitlerlaw.com
Email: jwlodinguer@reitlerlaw.com
*Attorneys for Plaintiff Bruce Desiste*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BRUCE DESISTE,

                        Plaintiff,

          -against-

SOLOMON SOBANDE a/k/a SOUNDS MUSIC GROUP,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 20-cv-6947

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Bruce Desiste, by his attorneys, Reitler Kailas & Rosenblatt LLC, as and for his Complaint against defendant Solomon Sobande a/k/a Sounds Music Group, alleges as follows:

## THE PARTIES

1.     Plaintiff Bruce Desiste ("Plaintiff") is a citizen of the State of New York.

2.     Upon information and belief, defendant Solomon Sobande a/k/a Sounds Music Group ("Defendant") is a citizen of the State of New Jersey.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a) in that there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

4.      Venue lies in this district pursuant to 28 U.S.C. §1391(a) in that a substantial part of the events giving rise to the claims herein occurred in the Southern District of New York, and at the time of commencing this action, Defendant is subject to personal jurisdiction in the Southern District of New York.

5.      Venue and personal jurisdiction are also proper in this District pursuant to paragraph 9 of a written profit sharing agreement entered into between the parties wherein the parties agreed to the exclusive jurisdiction of New York courts over this action.

## BACKGROUND

6.      Plaintiff, also known as "Krida" or "Kritter", is an aspiring recording artist and hip-hop music enthusiast.

7.      In or about 2015 in Fort Lauderdale, Florida, Plaintiff met up-and-coming hip-hop and rap artists Jahseh Dwayne Ricardo Onfroy p/k/a "XXXTentacion" ("XXXTentacion") and Stokely Clevon Goulbourne p/k/a "Ski Mask the Slump God" ("Ski Mask the Slump God").

8.      Plaintiff recognized XXXTentacion's and Ski Mask the Slump God's respective talents and considered them "diamonds in the rough" with tremendous potential.

9.      Plaintiff cultivated a relationship with each of them over time, occasionally offering them general advice about their respective musical careers.

10.     Plaintiff's personal relationship with XXXTentacion was especially close, and Plaintiff regularly communicated with and visited XXXTentacion while he was in jail and even on one occasion paid his friend's bail.

11.     After knowing XXXTentacion and Ski Mask the Slump God for over a year, and recognizing the fact that he himself was not a manager, Plaintiff determined that he wanted to help

XXXTentacion and Ski Mask the Slump God further their musical careers by introducing them to an experienced music industry manager.

12.     In or about the fall of 2016, Plaintiff approached his high school friend, defendant Solomon Sobande, who was a personal manager in the music industry, with the idea of introducing Defendant to XXXTentacion and Ski Mask the Slump God.

13.     Initially, Defendant had no interest in managing either of them.

14.     Plaintiff and Defendant continued to discuss the possibility of Plaintiff introducing Defendant to XXXTentacion and Ski Mask the Slump God and the potential for Defendant to manage Plaintiff's friends with Plaintiff's assistance.

15.     After some time, in or about late 2016, Defendant finally agreed to meet XXXTentacion and Ski Mask the Slump God.

16.     Prior to any introduction taking place, and with the hope and expectation that the introduction would lead to a management relationship between Defendant and XXXTentacion and/or Ski Mask the Slump God, Plaintiff and Defendant entered into an oral agreement pursuant to which Defendant agreed to pay Plaintiff twenty percent (20%) of all monies Defendant (or any entity he owned, i.e., Sounds Music Group) earned in connection with XXXTentacion's and Ski Mask the Slump God's respective musical careers (the "Oral Agreement").

17.     In late 2016, Plaintiff introduced Defendant to both XXXTentacion and Ski Mask the Slump God.

18.     Defendant openly acknowledges that Plaintiff introduced Defendant to XXXTentacion on his website, and admitted this fact in an interview he gave to Billboard Magazine that was published in October 2018.

19.     Upon information and belief, after Plaintiff's introductions, Defendant entered into written management agreements with both XXXTentacion and Ski Mask the Slump God to act as personal manager to each of them.

20.     On or about March 6, 2017, Plaintiff and Defendant memorialized the terms of the Oral Agreement in a written agreement mistakenly dated March 6, 2018 (the "Written Agreement" and collectively with the Oral Agreement, the "Agreements").

21.     Pursuant to the Written Agreement, in exchange for Plaintiff's introductions and Plaintiff's assistance to Defendant in managing the careers of XXXTentacion and Ski Mask the Slump God (collectively defined as "Artist" in the Written Agreement), Defendant agreed, for the duration of Defendant's respective management agreements with XXXTentacion and Ski Mask the Slump God, to pay Plaintiff a service fee of twenty percent (20%) of "Gross Receipts" as that term is defined in the Written Agreement.  A true and correct copy of the Written Agreement is annexed hereto as Exhibit A and incorporated by reference herein.

22.     Paragraph 6 of the Written Agreement provides, in relevant part, that Plaintiff

shall receive Twenty (20%) percent of Gross Receipts credited to and or received by [Defendant] from any activity by Artist including sales or other exploitations…of Artist activities related to Artist creative talents in the entertainment business throughout the world pursuant to the exclusive Management Agreement between [Defendant] and Artist.

23.     Paragraph 6 of the Written Agreement also defines "Gross Receipts" as "income [Defendant] receives from any and all activities in connection with Artist before the deduction of any payments".

24.     Pursuant to paragraph 7 of the Written Agreement, Defendant was required to render semi-annual accountings, accompanied by any payment due, to Plaintiff within thirty (30)

days of Defendant's receipt of monies from or on behalf of XXXTentaction and Ski Mask the Slump God.

25.     Defendant made three separate payments of $5,000, $5,000, and $10,000 to Plaintiff during the first five (5) months of 2017 pursuant to the Agreements, though these payments were not accompanied by any accountings.

26.     Defendant made a $20,000 payment to Plaintiff pursuant to the Agreements on or about May 30, 2017, though such payment was also not accompanied by any accounting.

27.     Since Plaintiff introduced Defendant to XXXTentacion and Ski Mask the Slump God, both artists experienced great commercial success as well as popular and critical acclaim.

28.     XXXTentacion rose to fame in 2017 with the re-release of his debut single "Look At Me", which was certified platinum by the Recording Industry Association of America ("RIAA") and appeared on his double platinum studio album entitled "17".  XXXTentacion's next album, entitled "?", was released in 2018 and debuted at number one on the Billboard 200, with the album's lead single, "Sad!", topping the Billboard Hot 100.  His bright career was short-lived however; XXXTentacion was fatally shot in June 2018 at the age of 20.

29.     Upon information and belief, Defendant continues to earn and receive management commissions from XXXTentacion's estate.

30.     Ski Mask the Slump God rose to prominence at around the same period of time. His 2017 mixtape entitled "You Will Regret" was certified gold by the RIAA, while his 2018 mixtape "Beware the Book of Eli" reached No. 50 on the Billboard 200 chart.  Ski Mask the Slump God's debut album "Stokely" peaked at number 6 on the Billboard 200 chart and his second studio album is slated for release later this year.

31.     Upon information and belief, Defendant is still acting as Ski Mask the Slump God's manager and continues to earn and receive management commissions from Ski Mask the Slump God.

32.     Upon information and belief, Defendant has received more than $10 million in management commissions from XXXTentacion and Ski Mask the Slump God.

33.     Accordingly, Plaintiff is entitled to in excess of $2 million pursuant to the terms of the Agreements.

34.     To date, Defendant has only paid Plaintiff $40,000.

35.     Defendant has failed to render any accountings whatsoever to Plaintiff, let alone semi-annual accountings or accountings within thirty (30) days of Defendant's receipt of monies from XXXTentaction and/or Ski Mask the Slump God, as required under paragraph 7 of the Written Agreement.

36.     By letter dated August 8, 2019, Plaintiff, through his counsel, notified Defendant of his material breach of the Written Agreement and demanded that Defendant cure same by paying Plaintiff in accordance with the terms thereof.  A true and correct copy of the August 8, 2019 letter is annexed hereto as Exhibit B and incorporated by reference herein.

37.     Although Defendant contacted Plaintiff directly upon receiving the August 8, 2019 letter and acknowledged that he owed Plaintiff money, Defendant did not render any accountings or payments to Plaintiff thereafter.

38.     By email dated January 10, 2020, Plaintiff, through his counsel, again contacted Defendant, reiterating the fact that Defendant had failed to comply with his contractual obligations to Plaintiff and demanding proper accountings and payment.

39.     No accounting or payment from Defendant was forthcoming.

40.     Despite due demand, Defendant has failed and refused to pay Plaintiff the full amount due Plaintiff under the parties' Agreements.

41.     Despite due demand, Defendant has failed and refused to account to Plaintiff in accordance with the Written Agreement.

## COUNT I

## BREACH OF CONTRACT

42.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 41 above as if fully set forth herein at length.

43.     By reason of the foregoing, Defendant has materially breached the Agreements.

44.     Plaintiff has satisfactorily performed all of his obligations to Defendant under the Agreements.

45.     As a direct and proximate result of Defendant's breaches of the Agreements, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $2,500,000.00.

WHEREFORE, Plaintiff demands judgment as follows:

(a)     On the First Claim, an award of damages to Plaintiff in an amount to be determined at trial, but not less than $2,500,000.00, plus prejudgment interest thereon;

(b)     An award to Plaintiff of the costs and disbursements incurred in this action; and

(c)     Such other and further relief as the Court deems just and proper.

Dated:  August 27, 2020

REITLER KAILAS & ROSENBLATT, LLC
Attorneys for Plaintiff

By: /s/ Brian D. Caplan
       Brian D. Caplan
       Julie B. Wlodinguer
885 Third Avenue, 20th Floor
New York, NY 10022
Tel. (212) 209-3050
bcaplan@reitlerlaw.com
jwlodinguer@reitlerlaw.com