

Sarah M. Matz
Partner
sarah@adelmanmatz.com
Dir: (646) 650-2213

August 23, 2021

**VIA ECF AND EMAIL**
Honorable Katherine Polk Failla, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Room 2103
New York, New York 10007

    Re: <u>*Desiste v. Sobande*; Action No. 20-cv-6947 (KPF)</u>

Hon. Judge Failla:

  We represent Defendant Solomon Sobande ("Defendant"), in the above-referenced action. We write pursuant to 3.C of Your Honor's Individual and Local Civil Rule 37.2 in response to plaintiff Bruce Desiste's ("Plaintiff") request for a pre-motion discovery conference in his August 18, 2021 letter ("8/18 Letter"). For the reasons set forth herein, Defendant's request should be denied.

  The agreement between Sounds Music Group, Inc. and Cleopatra Bernard (the "Bernard Agreement"), as well as documents showing the amounts received pursuant to that agreement are not discoverable as they are not relevant to Plaintiff's claim and are not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) and (b)(2); *Zubulake v UBS Warburg LLC*, 217 FRD 309, 316 (S.D.N.Y. 2003); *Woelfle v Black & Decker (U.S.) Inc.*, 1:18-CV-486, 2020 WL 1180749, at *2-3 (W.D.N.Y. Mar. 12, 2020) (finding that some of plaintiff's discovery demands were not relevant to the claims and would also "be a significant discovery burden … without clear necessity.").

  As the Court is aware, there are serious disputes as to the authenticity of the Alleged Agreement and whether it was agreed to by Defendant. *See* [Dkt No. 22]. However even if Plaintiff could prove that the Alleged Agreement was valid or enforceable, Plaintiff is not entitled documentation evidencing income and/or commissions received "pertaining to" Mr. Onfroy's work or "earned in connection with the musical career[] of" Mr. Onfory, as argued in the 8/18 Letter. The Alleged Agreement provides that Plaintiff shall only receive twenty percent (20%) of Gross Receipts received by SMG "***pursuant to the exclusive Management agreement between SMG and Artist***." *See* [Dkt No. 1-1 ¶6] (emphasis added). Furthermore, its "term… shall commence upon [its] execution" and "will be co-terminus with [Defendant's] exclusive Management Agreement with [A]rtist." *See* [Dkt No. 1-1 ¶2(a)]. The Alleged Agreement does not allow Plaintiff to commission on monies received pursuant to agreements with third parties that are "related to" or "connected with" Mr. Onfroy or his work.

**Adelman Matz P.C.**
Phone: (646) 650-2207 • Fax: (646) 650-2108

Mailing:
1173A Second Avenue, Suite 153
New York, New York 10065

Office:
780 Third Avenue, 14th Floor
New York, New York 10017

Plaintiff's argument and assumptions that the Management Agreement auto renewed for four years or that Defendant was entitled to continue receiving commissions after Mr. Onfory's death are unfounded and beside the point.  It is not necessarily the case that the Management Agreement auto renewed, as Defendant testified that Mr. Onfory had fired him on multiple occasions. *See* Solomon Tr. 199:2-200:12 ("A. Yes, that was 2017. Yeah, that was 2017. There came a point where X fired me, and I no longer worked with Ski Mask. . . . Q. When did X fire you? A. [] he fired me a few times, to be honest . . . Q. What is the longest period of time, from the beginning of your management to the day he died, where you were not his manager? A. I would say maybe around, like, three – three months, maybe. Q. What three months were those that you were not his manager? A. Four months maybe.").  It is also not true that Defendant was automatically entitled to continue to collect commissions following Mr. Onfroy's death.  Indeed, Mr. Onfroy's estate took the opposite position. *See id.,* pp. 215:6-216:7 ("Q. The question is simply: Did anybody on behalf of the estate or his mother, Cleopatra Bernard, ever take the position that you were not entitled to any more management commissions after XXX passed? A. Yes. Q. Okay. Who took that position? A. It was the lawyer for the estate.").

Regardless, the fact remains that none of the revenue at issue here actually was received pursuant to Defendant's exclusive Management Agreement with Mr. Onfory, and as such Plaintiff cannot claim he is entitled to any portion of it.  Defendant repeatedly testified that the income received after June 18, 2018, i.e., the date of Mr. Onfroy's death, was not pursuant to the exclusive management agreement with Mr. Onfroy.  *See e.g.*, Sobande Tr. Pp 204:21-205:5 ("Q. Following his death in June of 2018, did you receive payments from his estate? A. No. Q. Did you receive payments following June of 2018, relating to recordings that he created prior to his death? … A. Yes. But they were pursuant to a new agreement, not the agreement that I had with X. Q. Who did you have a new agreement with? A. Cleopatra Bernard."); pp. 201:3-19 ("Q. Have you commissioned releases made of his recordings after his death? . . .A. Okay. Okay. Mr. Caplan, my -- the commissions that I received from X stopped -- pursuant to the agreement that we, had stopped when he died."); pp. 210 ("Q. Did you continue to receive management commissions under your management agreement with XXX after he passed for work that he did while he was still alive?  A. No."). The documents related to income after June 18, 2018, should not be produced as they are not relevant nor are they proportional to the needs of this case.  Having to locate and produce two and a half years of financial records, when they are not recoverable by Plaintiff under any circumstance, is burdensome and wasteful.

There is also no basis to order the production of the Bernard Agreement.  It has nothing to do with Defendant's exclusive Management Agreement with Onfroy and is not relevant to this dispute.  Defendant should not be forced to produce agreements showing confidential business arrangements with third parties that are not agreements under which Plaintiff could claim he is entitled to commissions.  The plain language of the Alleged Agreement makes it clear that these documents are not relevant, and they should not be produced.

Defendant also rejects Plaintiff's unfounded accusations that Defendant has delayed, been dilatory or ignored his requests—Defendant has not engaged in any such conduct.  Plaintiff has been aware of Defendant's position that he would not be producing these documents since it was first raised at Defendant's deposition. They were the subject of various objections on the record at Defendant's deposition, including that they were not required to be produced pursuant to the Court's 6/16 Order.  For example, at the July 13, 2021 deposition, when the agreement with Ms. Bernard was requested, Defendant's counsel stated that, "… similar to the objection to relevance on that and we'll have to do deal with it with the Court." *See* Solomon Tr. 210:9-15.  Ten days later on July 23, 2021, Plaintiff finally sent his written demands for documents.  Notably, a week earlier on July 16, 2021, when

Plaintiff sought an extension of discovery on one limited issue, Plaintiff did not appraise the Court that this was an open issue for which discovery would be extended.[1]  Furthermore, Defendant cannot be dilatory when his time to respond is not even up until today.  Defendant further rejects Plaintiff's characterization of interactions between counsel.  The conversations between Mr. Adelman and Mr. Caplan in mid-August were settlement discussions where counsel discussed whether, for settlement purposes, certain information would be voluntarily provided, a fact which Ms. Wlodinguer and the undersigned discussed during the meet and confer.  Additionally, Mr. Adelman was out of the office on vacation from August 8-17th, and Mr. Caplan did not copy anyone else from our office on his initial emails.  Mr. Caplan emailed the undersigned on Friday August 13, 2021, at 6:40 p.m., and the undersigned responded that Monday to set up a meet and confer the following day.

Additionally, contrary to Plaintiff's misleading statements, the Court did not order Defendant to produce documentation reflecting the gross monies received by Defendant "***relating to XXXTentacion***" going forward as Plaintiff states (8/18 Letter, pp. 2) (emphasis added).  The Court ordered that from March 6, 2017, going forward, Defendant should "produce documents that are sufficient to show the gross receipts that were received by [Defendant] pursuant to the exclusive management agreements between my client and the two artists at issue." *See* 6/16 Tr., Page 22: 17-24.  The documentation at issue clearly falls outside of what was ordered to be produced.[2]

Plaintiff's comments about the subpoena to Mr. Celestin are baseless and irrelevant to this dispute.  Plaintiff has failed to identify any request that it 'believes' the agreement was responsive to, and indeed the claim that the agreement was sought by the June 23, 2021 subpoena belies his allegation that he was not previously aware of the agreement's existence prior to the July 13, 2021 deposition of Defendant.  Plaintiff's subpoena was egregiously broad and sought completely irrelevant documents.  Defendant's counsel did not instruct Mr. Celestin to do anything—Defendant served written objections to the subpoena and discussed Defendant's positions relating to the subpoena.  Plaintiff is not even seeking to compel responses from Mr. Celestin, so the fact that Mr. Celestin did not produce the Bernard Agreement, is completely irrelevant.  Regardless, and for the reasons set forth above, the documents requested are not relevant and should not be produced.

Defendant appreciates the Court's time in assisting the parties to resolve this discovery issue and looks forward to addressing these issues with the Court at a pre-motion conference.

---

[1] Defendant is not objecting to the timeliness of the requests as the parties later (on July 27th) agreed not to do so in order to preserve follow up issues as a matter of courtesy.  However, it is disingenuous for Plaintiff to accuse Defendant of dilatory conduct under these facts.

[2] Plaintiff's attempt to imply that the Court previously ordered the production of these documents is not true.  In response to Request No. 19, which sought documents reflecting the gross income received by "Defendant relating to his management of XXXtentacion", Defendant asserted objections and specifically stated that he would only be producing documents "sufficient to show the gross income received pursuant to the exclusive management agreement with Jahseh Dwayne Ricardo Onfroy p/k/a/ XXXtentacion between March 6, 2018 and June 18, 2018".  Plaintiff's prior discovery application was focused on income received *prior* to March 6, 2018 and "from the start" of Defendant's relationship with XXXTentacion.  *See* [Dkt No. 21, pp. 2].  At the 6/16 Conference, Plaintiff presented arguments regarding his positions on why the periods prior to March 6, 2018 were discoverable, and counsel for Defendant presented his counter argument.  Ultimately, with respect to the periods prior to the contract being entered into, the Court did not order Defendant to produce documents prior to March of 2017, as the Court expressed concerns with the oral agreement violating the statute of frauds.  The Court did not rule that the monies received pursuant to the Bernard Agreement should be produced.  It only ruled that documents had to be produced sufficient to show income received pursuant to Defendant's exclusive Management Agreement with XXXTentacion.  This implication is also contrary to Mr. Caplan's statements at Defendant's deposition.

Respectfully Submitted,

ADELMAN MATZ P.C.

Sarah M. Matz, Esq.

Cc:   All Counsel of Record Via ECF

```
The Court is in receipt of Defendant's above response to
Plaintiff's request for a pre-motion conference.  Defendant is
hereby ORDERED to produce the Bernard Agreement to Plaintiff on or
before August 30, 2021.  The Court trusts that the parties will
take appropriate measures to protect any confidentiality concerns,
such as producing the Bernard Agreement on an attorneys' eyes only
basis if necessary.  Should Plaintiff determine that the Bernard
Agreement relates to Defendant's Management Agreement with
XXXTentacion, he may renew his request for discovery related to
monies received by Defendant in connection with the Bernard
Agreement.

The Clerk of Court is directed to terminate the motion at docket
entry 28.

Dated:    August 24, 2021              SO ORDERED.
          New York, New York
```

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE